## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Alan Richard Sandberg, *Debtor* | ) | Case No. 21-00635-lmj13 |
| | ) | |
| U.S. Bank National Association, not in its individual capacity but solely as trustee for RMTP Trust, Series 2021 Cottage-TT-V, by Rushmore Loan Management Services, LLC, *Creditor* | ) ) ) | Chapter: 13 |
| | ) | |
| vs. | ) | |
| | ) | |
| Alan Richard Sandberg, *Debtor* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Carol F Dunbar, *Trustee* | ) | |

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**If you are experiencing a hardship such as job loss, income reduction, or sickness due to COVID-19 and you are no longer able to make your mortgage payment please have your attorney contact our local counsel or contact us directly to discuss what mortgage payment relief options may be available to you. Options may include a temporary suspension of payments or similar alternative. Not all borrowers will qualify or be eligible for these options but we encourage you to call and determine what we can offer to assist you.**

COMES NOW, U.S. Bank National Association, not in its individual capacity but solely as trustee for RMTP Trust, Series 2021 Cottage-TT-V, by Rushmore Loan Management Services, LLC, its subsidiaries, affiliates, predecessors in interests, successors or assigns, ("Creditor"), and in support of its motion, states as follows:

1.      Creditor files this motion under Rules 4001 and 9014, Rules of Bankruptcy Procedure.  On May 4, 2021, the Debtor filed a Petition under Chapter 13 of the Bankruptcy Code wherein Creditor was listed as a secured creditor as to real property of the Debtor.

2.      Jurisdiction is invoked in the District Court under 28 U.S.C. §1334(a) and jurisdiction is proper in this Court pursuant to 28 U.S.C. §1408(1) and §157(b)(2)(G).

3.      Alan Richard Sandberg ("Debtor", whether one or more) resides at 3148 200th Street, Fort Madison, Iowa 52627.

4.      Carol F Dunbar is the Trustee duly appointed by law ("Trustee").

5.      On February 13, 2018, Alan R. Sandberg executed a promissory note (the "Note") in the principal sum of $256,304.00.

6.      Contemporaneously with the execution of the Note, a Mortgage was executed by Alan R. Sandberg to secure repayment of the Note.   The Mortgage was filed for record with the Office of the Recorder of Deeds of Lee County, Iowa, on February 21, 2018, in Book No. 2018, at Page 693.  A copy of the Mortgage is attached as Exhibit "B".  The Property is legally described as follows:

**PART OF THE NORTHWEST QUARTER (NW1/4) OF SECTION 27, TOWNSHIP 68 NORTH, RANGE 4 WEST OF THE 5TH P.M., LEE COUNTY, IOWA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF THE NORTHWEST QUARTER OF SAID SECTION 27; THENCE WEST (ASSUMED BEARING FOR THIS DESCRIPTION) 327.70 FEET ALONG THE NORTH LINE OF THE NORTHWEST QUARTER OF SAID SECTION 27; THENCE SOUTH 00°56'35" WEST 289.12 FEET; THENCE SOUTH 85°50'40" EAST 331.69 FEET ALONG AN EXISTING BOARD FENCE LINE, OR LINE EXTENDED, TO A POINT ON THE EAST LINE OF THE NORTHWEST QUARTER OF SAID SECTION 27; THENCE NORTH 00°18'00" EAST 313.12 FEET ALONG THE EAST LINE OF SAID NORTHWEST QUARTER TO THE POINT OF BEGINNING, CONTAINING 2.28 ACRES, MORE OR LESS, BEING SUBJECT TO THE RIGHTS OF THE PUBLIC FOR ROADWAY PURPOSES ALONG THE EXISTING COUNTY ROAD.**, commonly known as 3148 200th St, Fort Madison, Iowa 52627 (the "Property")

7.      Creditor is the holder of the note secured by the security instrument and lien in the real property through its agent/custodian.

8.      The total debt due on this loan as of August 18, 2022 is $256,760.27, an exact payoff is available upon request of an appropriate party.

9.      The Plan provides that the pre-petition arrearage due on the Note would be paid to the Trustee and Debtor would pay the post-petition payments directly to Creditor.

10.     The Debtor has failed to pay the post-petition payments due on the promissory note held by the Creditor.   The following amounts are now due and owing:

| DESCRIPTION | AMOUNT |
|---|---|
| (5) Late Payments @ $2,068.19 (04/01/2022 - 08/01/2022) | $10,340.95 |
| Suspense Balance | -$1,603.93 |
| MFR Filing Fee | $188.00 |
| MFR Attorney Fees | $850.00 |
| Total | $9,775.02 |

11.     These amounts due and owing are in addition to any amounts that have come due after the filing of this Motion pursuant to the terms of the Promissory Note and Security Instrument.

12.     The Debtor has failed to cure the delinquency and the estate lacks sufficient assets from which the delinquency can be cured.   Creditor's interest in the real property lacks adequate protection.

13.     The Debtor has materially defaulted with respect to payment of Creditor's secured claim and has caused unreasonable delay, which is prejudicial to this creditor.

14.     To remedy this prejudicial delay to creditor, an Order for Relief from the Automatic Stay should be granted that is effective immediately without a stay of enforcement pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

15.     Creditor seeks relief for the purpose of exercising its remedies available under state law, up to and including foreclosure of its mortgage against Debtor(s) interest in the Property. Creditor further seeks relief in order to contact Debtor(s), at its option, by telephone or by written correspondence, to offer, provide and enter into a forbearance agreement, deed in lieu of foreclosure, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

16.     Creditor specifically requests permission from this Honorable Court to communicate with the Debtor(s) and Debtor(s)' counsel to the extent necessary to comply with applicable nonbankruptcy law.

17.     Creditor requests that any order granting it relief from the automatic stay contain a provision that the order shall survive any conversion of this case to a Chapter 7 proceeding.

**WHEREFORE**, Creditor, its successors or assigns, prays that it be granted Relief from the Automatic Stay of 11 U.S.C. §362 to enforce its lien granted in the Mortgage, and for such other and further relief, as the Court deems proper.

SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*
_____

Wendee Elliott-Clement, AT0011311
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
iabksdecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

## CERTIFICATE OF MAILING/SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was filed electronically on this August 25, 2022 with the United States Bankruptcy Court for the Southern District of Iowa, and shall be served on the parties in interest via email by the Court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court and shall be served by U.S. Mail, First Class, postage prepaid, on those parties directed by the Court on the Notice of Electronic Filing issued by the Court and as required by the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court.

Alan Richard Sandberg
3148 200th Street
Fort Madison, IA 52627
**DEBTOR**

Bruce A Buckrop
114 19th Street
Rock Island, IL 61201
**ATTORNEY FOR DEBTOR**

Deanna R. Bachman
505 5th Ave, Ste 406
Des Moines, IA 50309
**COUNSEL FOR TRUSTEE**

Carol F Dunbar
2616 Orchard Drive Ste B
Cedar Falls, IA  50613
**TRUSTEE**

United States Trustee
Federal Bldg, Room 793
210 Walnut Street
Des Moines, IA  50309
**U.S. TRUSTEE**

SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*
_____

Wendee Elliott-Clement, AT0011311
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
iabksdecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

File No. 234199
Case No: 21-00635-lmj13

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Alan Richard Sandberg, *Debtor* | ) | Case No. 21-00635-lmj13 |
| | ) | |
| U.S. Bank National Association, not in its individual capacity but solely as trustee for RMTP Trust, Series 2021 Cottage-TT-V, by Rushmore Loan Management Services, LLC, *Creditor* | ) ) ) | Chapter: 13 |
| | ) | |
| vs. | ) | |
| | ) | |
| Alan Richard Sandberg, *Debtor* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Carol F Dunbar, *Trustee* | ) | |

**SUMMARY OF EXHIBITS AND CERTIFICATE OF SERVICE**

The following Exhibits referenced in the Attached Pleading filed on behalf of U.S. Bank National Association, not in its individual capacity but solely as trustee for RMTP Trust, Series 2021 Cottage-TT-V, by Rushmore Loan Management Services, LLC are attached electronically.

1. Exhibit A, the Note for the Property that is the subject of the Pleading.

2. Exhibit B, the Mortgage for the Property that is the subject of the Pleading.

3. Exhibit C, the Corporate Assignment of Mortgage.


SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*
_____
Wendee Elliott-Clement, AT0011311
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
iabksdecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

## CERTIFICATE OF MAILING/SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was filed electronically on this August 25, 2022 with the United States Bankruptcy Court for the Southern District of Iowa, and shall be served on the parties in interest via email by the Court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court and shall be served by U.S. Mail, First Class, postage prepaid, on those parties directed by the Court on the Notice of Electronic Filing issued by the Court and as required by the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court.

Alan Richard Sandberg
3148 200th Street
Fort Madison, IA 52627
**DEBTOR**

Bruce A Buckrop
114 19th Street
Rock Island, IL 61201
**ATTORNEY FOR DEBTOR**

Deanna R. Bachman
505 5ᵗʰ Ave, Ste 406
Des Moines, IA 50309
**COUNSEL FOR TRUSTEE**

Carol F Dunbar
2616 Orchard Drive Ste B
Cedar Falls, IA  50613
**TRUSTEE**

United States Trustee
Federal Bldg, Room 793
210 Walnut Street
Des Moines, IA  50309
**U.S. TRUSTEE**

SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*
_____

Wendee Elliott-Clement, AT0011311
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
iabksdecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

File No. 234199
Case No: 21-00635-lmj13

**NAME:**    Alan R Sandberg

**CLIENT:**   Rushmore Loan Management Services, LLC

**ACCT NO:** XXXXXX4636

**CASE NO:**   21-00635-lmj13

**DATE FILED:** 5/4/2021

**FILE NO:**     234199

| TRANS DATE | APPLIED TO | CHECK NUMBER | DESCRIPTION | AMOUNT RECEIVED | AMOUNT DUE | AMOUNT UNAPPLIED | SUSPENSE BALANCE |
|---|---|---|---|---|---|---|---|
| 05/20/21 | 06/01/21 | | | $ 2,101.34 | $ 2,057.77 | 43.57 | $ 43.57 |
| 07/22/21 | 07/01/21 | | | $ 2,150.00 | $ 2,057.77 | 92.23 | 135.80 |
| 08/30/21 | 08/01/21 | | | $ 2,200.00 | $ 2,057.77 | 142.23 | 278.03 |
| 10/15/21 | 09/01/21 | | | $ 2,200.00 | $ 2,057.77 | 142.23 | 420.26 |
| 11/10/21 | 10/01/21 | | | $ 2,500.00 | $ 2,057.77 | 442.23 | 862.49 |
| 01/13/22 | 11/01/21 | | | $ 2,571.97 | $ 2,057.77 | 514.20 | 1,376.69 |
| 03/08/22 | 12/01/21 | | | $ 2,100.00 | $ 2,068.19 | 31.81 | 1,408.50 |
| 03/29/22 | 01/01/22 | | | $ 2,200.00 | $ 2,068.19 | 131.81 | 1,540.31 |
| 06/03/22 | 02/01/22 | | | $ 2,100.00 | $ 2,068.19 | 31.81 | 1,572.12 |
| 07/08/22 | 03/01/22 | | | $ 2,100.00 | $ 2,068.19 | 31.81 | 1,603.93 |
| **DUE** | **04/01/22** | | | | **$ 2,068.19** | **(2,068.19)** | **(464.26)** |
| **DUE** | **05/01/22** | | | | **$ 2,068.19** | **(2,068.19)** | **(2,532.45)** |
| **DUE** | **06/01/22** | | | | **$ 2,068.19** | **(2,068.19)** | **(4,600.64)** |
| **DUE** | **07/01/22** | | | | **$ 2,068.19** | **(2,068.19)** | **(6,668.83)** |
| **DUE** | **08/01/22** | | | | **$ 2,068.19** | **(2,068.19)** | **(8,737.02)** |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## ORIGINAL

# Note

February 13, 2018
*(Date)*

West Des Moines
*(City)*

*(State)*

**FHA Case No.** ████████

3148 200th St
Fort Madison, IA 52627
*(Property Address)*

1. **BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay U.S. $ 256,304.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is Freedom Mortgage Corporation

   I will make all payments under this Note in the form of cash, check or money order.

   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    3.750%.

   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

   **(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

   I will make my monthly payment on the 1st  day of each month beginning on April 1, 2018    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on March 1, 2048    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

   I will make my monthly payments at PO Box 89486, Cleveland, OH  44101-9486
   or at a different place if
   required by the Note Holder.

   **(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $   1,186.99  .

4. **BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FHA Fixed Rate Note-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

1/21/2015
VMP1R(IA) (1502).00
Page 1 of 3

Exhibit A

5. **LOAN CHARGES.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) **Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of          15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B) **Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) **Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D) **No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) **Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FHA Fixed Rate Note-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R(IA) (1502).00
Page 2 of 3

**10. UNIFORM SECURED NOTE.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  (Seal)          _____  (Seal)
Alan R. Sandberg                 -Borrower                                          -Borrower


_____  (Seal)          _____  (Seal)
                                 -Borrower                                          -Borrower


                                                                      *(Sign Original Only)*

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

**Loan Origination Organization:** Freedom Mortgage Corporation
**NMLS ID:** 2767
**Loan Originator:** Philip Key Gillies
**NMLS ID:** 32516

FHA Fixed Rate Note-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

1/21/2015
VMP1R(IA) (1502).00
Page 3 of 3

*send berg*

**BK: 2018 PG: 693**
**Instrument Number:    693**
**Recorded: 2/21/2018 at 1:29:21.0 PM**
**Fee Amount: $97.00**
**Revenue Tax:**
**Nancy Booten RECORDER**
**Lee County, Iowa**

**Prepared By:**
Michelle E. Morgan
Freedom Mortgage Corporation
P.O. Box 8001, Fishers, IN 46038-8001
800- 222- 3333
**Return To:**
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001
Full Legal Description located on page 19
Borrower Name(s) located on page 2.
Lender Name located on page 2.

# Mortgage

| FHA Case No. |
|---|
| ██████████ |

MIN: ████████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated February 13, 2018 , together with all Riders to this document.

FHA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 1 of 18

Exhibit B

Case 21-00635-lmj13   Doc 34   Filed 08/25/22   Entered 08/25/22 14:58:36   Desc Main
Document   Page 12 of 32

**Prepared By:**
Michelle E. Morgan
Freedom Mortgage Corporation
P.O. Box 8001, Fishers, IN 46038-8001

██████████

**Return To:**
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001
Full Legal Description located on page 19
Borrower Name(s) located on page 2.
Lender Name located on page 2.

# Mortgage

| FHA Case No. |
| --- |
| ████████ |

**MIN:** ██████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated February 13, 2018 , together with all Riders to this document.

FHA Mortgage with MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 1 of 18

**(B)** **"Borrower"** is Alan R. Sandberg, single.

Borrower is the mortgagor under this Security Instrument.

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)** **"Lender"** is Freedom Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of The State of New Jersey
Lender's address is 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ 08054

**(E)** **"Note"** means the promissory note signed by Borrower and dated February 13, 2018 . The Note states that Borrower owes Lender Two Hundred Fifty Six Thousand Three Hundred Four and 00/100
Dollars (U.S. $256,304.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 1, 2048        .

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Planned Unit Development Rider
☐ Other
☐ Rehabilitation Loan Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

FHA Mortgage with MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 2 of 18

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 3 of 18

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
County                                              of Lee                                              :
    *(Type of Recording Jurisdiction)*        *(Name of Recording Jurisdiction)*
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

**Parcel ID Number:** 022909271000100          which currently has the address of
3148 200th St                                             *(Street)*
Fort Madison                   *(City)*, Iowa 52627    *(Zip Code)*
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.**    **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

▆▆▆ ▆▆▆▆▆▆▆ ▆▆▆▆ MERS-IA                                9/30/2014
Bankers Systems™ VMP ®                               VMP4N(IA) (1506).00
Wolters Kluwer Financial Services                        Page 4 of 18

Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

> First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

> Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

> Third, to interest due under the Note;

> Fourth, to amortization of the principal of the Note; and,

> Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the

FHA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 5 of 18

monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

FHA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 7 of 18

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.    Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7.    Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Mortgage with MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 8 of 18

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

FHA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 9 of 18

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

IA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 10 of 18

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

FHA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 11 of 18

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

FHA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 12 of 18

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to

FHA Mortgage with MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 13 of 18

Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums**

FHA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 14 of 18

secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. **The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

26. **Waivers.** Borrower relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Borrower waives any right of exemption as to the Property.

27. **HOMESTEAD EXEMPTION WAIVER.** I UNDERSTAND THAT HOMESTEAD PROPERTY IS IN MANY CASES PROTECTED FROM THE CLAIMS OF CREDITORS AND EXEMPT FROM JUDICIAL SALE; AND THAT BY SIGNING THIS MORTGAGE, I VOLUNTARILY GIVE UP MY RIGHT TO THIS PROTECTION FOR THIS MORTGAGED PROPERTY WITH RESPECT TO CLAIMS BASED UPON THIS MORTGAGE.

██████████████ MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

████████ 9/30/2014
VMP4N(IA) (1506).00
Page 15 of 18

**Borrower**

_____     _____
Alan R. Sandberg                      **Date**

_____     _____
                                      **Date**

_____     _____
                                      **Date**

_____     _____
                                      **Date**

**28.  Redemption Period.** If the Property is less than 10 acres in size and Lender waives in any foreclosure proceeding any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 6 months. If the court finds that the Property has been abandoned by Borrower and Lender waives any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 60 days. The provisions of this Section 28 shall be construed to conform to the provisions of Sections 628.26 and 628.27 of the Code of Iowa.

FHA Mortgage With MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 16 of 18

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE
READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO
OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY
BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY
ANOTHER WRITTEN AGREEMENT.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ _(Seal)_
Alan R. Sandberg                                   **-Borrower**

_____ _(Seal)_
                                                   **-Borrower**

_____ _(Seal)_
                                                   **-Borrower**

_____ _(Seal)_
                                                   **-Borrower**

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Iowa Mortgage with MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 17 of 18

**Acknowledgment**
State of _Iowa_
County of _Lee_
This instrument was acknowledged before me on _February 13,_  _2018_    by
_Alan R. Sandberg_

_Mary E Wiegard_
_Notary Public_    **Mary E Wiegard**

_My commission expires:_ _02/12/2019_

```
NOTARIAL SEAL
IOWA          MARY E. WIEGARD
              Commission Number 708246
              My Commission Expires
              February 12, 2019
```

**Loan Origination Organization:** Freedom Mortgage Corporation
**NMLS ID:** ▮▮▮▮
**Loan Originator:** Philip Key Gillies
**NMLS ID:** ▮▮▮▮

▮▮▮▮▮ MERS-IA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(IA) (1506).00
Page 18 of 18

## Exhibit A

PART OF THE NORTHWEST QUARTER (NW1/4) OF SECTION 27, TOWNSHIP 68
NORTH, RANGE 4 WEST OF THE 5TH P.M., LEE COUNTY, IOWA, AND BEING MORE
PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHEAST
CORNER OF THE NORTHWEST QUARTER OF SAID SECTION 27; THENCE WEST
(ASSUMED BEARING FOR THIS DESCRIPTION) 327.70 FEET ALONG THE NORTH
LINE OF THE NORTHWEST QUARTER OF SAID SECTION 27; THENCE SOUTH
00°56'35" WEST 289.12 FEET; THENCE SOUTH 85°50'40" EAST 331.69 FEET ALONG AN
EXISTING BOARD FENCE LINE, OR LINE EXTENDED, TO A POINT ON THE EAST
LINE OF THE NORTHWEST QUARTER OF SAID SECTION 27; THENCE NORTH
00°18'00" EAST 313.12 FEET ALONG THE EAST LINE OF SAID NORTHWEST
QUARTER TO THE POINT OF BEGINNING, CONTAINING 2.28 ACRES, MORE OR
LESS, BEING SUBJECT TO THE RIGHTS OF THE PUBLIC FOR ROADWAY PURPOSES
ALONG THE EXISTING COUNTY ROAD.

BK: 2022 PG: 2437
Number: 2022 2437
Recorded: 6/10/2022 at 1:20:16.0 PM
County Recording Fee: $7.00
Iowa E-Filing Fee: $3.00
Combined Fee: $10.00
Revenue Tax:
Nancy Booten RECORDER
Lee County, Iowa

**Prepared By: Jaysankar Vishnupal, Freedom Mortgage Corporation 20 Lake Center Drive  Marlton, NJ, 08053 (855) 690-5900**

Return By Mail To:
RoseAnn McKenry
Freedom Mortgage Corporation
20 Lake Center Drive
Marlton, NJ  08053

## CORPORATE ASSIGNMENT OF MORTGAGE

Lee (Northern District), Iowa
Freedom Mortgage Corporation#: ███████ "SANDBERG,"

Date of Assignment: April 19th, 2022
Assignor: Freedom Mortgage Corporation at 907 Pleasant Valley Ave., Suite 300, Mt. Laurel, NJ  08054
Assignee: U.S. Bank National Association, not in its individual capacity but solely as trustee for RMTP Trust, Series 2021 Cottage-TT-V at 7114 E. Stetson Dr., Ste 250, Scottsdale, AZ  85251

Executed By: ALAN R. SANDBERG, SINGLE.  To: Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Freedom Mortgage Corporation, its successors and assigns
Dated: 02-13-2018 Recorded: 02-21-2018 as Instrument No. 693, Book/Reel/Liber 2018, Page/Folio 693  in the County of Lee (Northern District), State of Iowa.

Property Address: 3148 200TH ST, FORT MADISON, IA  52627

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $256,304.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

Freedom Mortgage Corporation
On April 19th, 2022

By: _____
Roseann McKenry, Coordinator, Lien Release

STATE OF New Jersey
COUNTY OF Burlington

On April 19th, 2022, before me, Brenda Rostrom, a Notary Public in and for Burlington in the State of New Jersey, personally appeared Roseann McKenry, Coordinator, Lien Release  of Freedom Mortgage Corporation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Brenda Rostrom
Notary Expires: 1/29/2027  #2283515

████████ AM*███████████████ASTATE_MORT_ASSIGN_ASSN

Exhibit C

BK:  2021 PG:  2238
Recorded: 5/21/2021 at 2:05:50.0 PM
County Recording Fee: $7.00
Iowa E-Filing Fee: $3.00
Combined Fee: $10.00
Revenue Tax:
Nancy Booten RECORDER
Lee County, Iowa

| Prepared By: | Freedom Mortgage Corporation Lateef Smith (IN) | Address: | 20 Lake Center Drive, Marlton, NJ 08053 | Phone Number: | (855) 690-5900 |

MERS Phone #: **(888) 679-6377**

# ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Freedom Mortgage Corporation, its successors and assigns , P.O. Box 2026, Flint, MI 48501-2026 (888) 679-6377,** by these presents does convey, assign, transfer and set over to: **Freedom Mortgage Corporation, 907 Pleasant Valley Ave Ste 3, Mount Laurel, NJ 08054,** the described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$256304.00** is recorded in the State of **Iowa**, County of **Lee** Official Records, dated **02/13/2018** and recorded on **02/21/2018**, as Instrument No. **693** in Book No. **2018**, at Page No. **693.**

Original Mortgagor: **ALAN R. SANDBERG, SINGLE.**

Original Mortgagee: **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Freedom Mortgage Corporation, its successors and assigns**

Property Address: **3148 200TH ST FORT MADISON, IA 52627**

Date: **05/20/2021.**

**Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Freedom Mortgage Corporation, its successors and assigns**

By: *Howard D Wiggins II*

Name: **HOWARD D WIGGINS II**

Title: **Assistant Secretary**

STATE OF **New Jersey**
COUNTY OF **BURLINGTON** } s.s.

On **05/20/2021**, before me, **Carla R Johnson**, Notary Public, personally appeared **HOWARD D WIGGINS II, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Freedom Mortgage Corporation, its successors and assigns** , personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: **Carla R Johnson**
My Commission Expires: **08/18/2021**

Drafted By: **Lateef Smith (IN)**
AND WHEN RECORDED MAIL TO:
**Freedom Mortgage Corporation**
**ATTN: Assignment of Mortgage Department**
**20 Lake Center Drive**
**Marlton, NJ 08053**